1

2

3

4

5

6

7

8        **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DESHONE LEE SMITH,                    No. CIV S-08-0506-LKK-CMK-P

12              Plaintiff,

13        vs.                              FINDINGS AND RECOMMENDATIONS

14   J. TORREZ, et al.,

15              Defendants

16   _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is plaintiff's amended complaint (Doc. 15).[1]

19              The court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21   § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23   from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24   _____

25              [1]    Plaintiff named several "witnesses" in his original complaint which are listed on
     the docket as defendants.  As none of these individuals are named in the amended complaint, the
     Clerk of the Court should be directed to terminate them from this action.  These individuals
26   include: Stormes, Kim, Abrams and Baubach.

1   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

2   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

3   This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne,

4   84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied

5   if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon

6   which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

7   allege with at least some degree of particularity overt acts by specific defendants which support

8   the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

9   impossible for the court to conduct the screening required by law when the allegations are vague

10  and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

12          Plaintiff has filed an amended complaint pursuant to this court's order.  After

13  finding his original complaint failed to link his claims to any defendant, other than Torrez, whom

14  he alleges was involved in the incident, the court allowed plaintiff an opportunity to file an

15  amended complaint to make the necessary allegations.  Plaintiff's amended complaint asserts

16  facts as to the involvement of the other defendants, with the exception of defendant Parker.

17          Plaintiff's allegations arise from an incident on August 2, 2007 in which he claims

18  officer Torrez assaulted him.  None of the named defendants were present at the time of the

19  alleged assault.  Instead each of them arrived at the scene either responding to an alarm or to

20  hearing a scuffle.  However, it appears that the only two officers actually involved in the scuffle

21  were Torrez and Sly[2].  The other individuals only witnessed the incident or participated in

22  

23          [2]      Officer Sly is not named as a defendant in this action.  To the extent plaintiff
    intended to name officer Sly as a defendant, he fails to allege sufficient facts to state a claim
24  against him.  The only facts alleged as to officer Sly's involvement, are that officer Sly was
    attempting to subdue plaintiff by holding him in a prone position and attempting to place him in
25  handcuffs at the time the other officers and defendants responded to the alarm.  As discussed in
    relation to the other defendants, this was a reasonable amount of force to use given the situation.
26  Plaintiff does not allege any facts for the court to conclude that officer Sly was involved with
    officer Torrez in the actual "assault."

subduing plaintiff.  All of the defendants witnessed officers Torrez and Sly holding plaintiff down on the ground with one hand placed in a handcuff and the other unrestrained.  Plaintiff alleges the following involvement of each defendant:

Officer Ziebert: After responding to an alarm, officer Ziebert assisted plaintiff to his feet and to the holding cell after plaintiff had been subdued.

Officer Stewart: After responding to an alarm, officer Stewart assisted officer Ziebert in escorting plaintiff to a holding cell.

Sgt. Costa: After responding to an alarm, Sgt. Costa directed some of the other officers to place leg restraints on plaintiff and place him in a holding cell, informed a nurse "to due a '7219'" on plaintiff, and after finding the handcuffs were not working, processed the handcuffs into evidence in the investigative services unit office.

Abshire: Defendant Abshire also responded to the alarm.  When Abshire noticed one of plaintiff's hands was out of the handcuffs, he finished placing the handcuffs on plaintiff's left hand.  Sgt. Costa then handed Abshire leg restraints, which he placed on plaintiff's ankles.

Drennan[3]: Defendant Drennan respondent to the incident after hearing a scuffle.  Plaintiff informed defendant Drennan "to go to the 'inspector general' and inform Matthew L. Cate, about this incident."

Officer Pollard: Officer Pollard responded to the incident after hearing what sounded like a whistling alarm.  He then witnessed the incident as described above.  No specific personal involvement of this defendant is identified, other than being a witness.

## II.  DISCUSSION

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

---

[3]     Defendant Drennan appears on the docket as Brennan.  The Clerk of the Court will be directed to correct the spelling of this defendant's name.

1   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

2   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or

3   omits to perform an act which he is legally required to do that causes the deprivation of which

4   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and

5   conclusory allegations concerning the involvement of official personnel in civil rights violations

6   are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the

7   plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged

8   constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

9          Supervisory personnel are generally not liable under § 1983 for the actions of their

10  employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

11  respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

12  violations of subordinates if the supervisor participated in or directed the violations, or had actual

13  knowledge of the violations and failed to act to prevent them.  See id.  When a defendant holds a

14  supervisory position, the causal link between him and the claimed constitutional violation must

15  be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

16  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the

17  involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v.

18  Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

19         The treatment a prisoner receives in prison and the conditions under which the

20  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

21  and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

22  511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

23  of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

24  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

25  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

26  "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

4

801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

when two requirements are met: (1) objectively, the official's act or omission must be so serious

such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

official must have a "sufficiently culpable mind."  See id.

When prison officials stand accused of using excessive force, the core judicial

inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);

Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as

opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims,

is applied to excessive force claims because prison officials generally do not have time to reflect

on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475

U.S. at 320-21.  In determining whether force was excessive, the court considers the following

factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

between the need for force and the amount of force used; (4) the nature of the threat reasonably

perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

because the use of force relates to the prison's legitimate penological interest in maintaining

security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

475 U.S. at 321-22.

In this case, plaintiff has not alleged sufficient facts as to any involvement of

defendants Stewart, Pollard, Ziebert, Drennan or Parker, in violating petitioner's constitutional

rights against unreasonable force.  Witnessing the scuffle plaintiff was involved in with officer

1   Torrez, without actually participating in it, is insufficient to state a claim for excessive force.

2   Plaintiff only alleges defendants Pollard and Drennan witnessed the incident.  There are no

3   allegations that either of these defendants were actually involved in the incident.  As to

4   defendants Stewart and Ziebert, plaintiff alleges these officers helped him to his feet after he had

5   been restrained and escorted him to a holding cell.  Plaintiff does not allege either of these

6   defendants were actually involved in the incident, or that they used any force on plaintiff at all.

7   Finally, plaintiff does not allege any involvement of defendant Parker.  In fact, other than listing

8   defendant Parker as a defendant, he does not make any reference to defendant Parker at all in his

9   amended complaint.

10          Plaintiff's alleges that defendant Abshire finished placing plaintiff's hands in

11   handcuffs, which were only halfway on when he arrived at the scene, and he personally placed

12   the leg restrains on plaintiff.  Defendant Abshire was responding to an alarm.  When he arrive at

13   the scene, according to plaintiff, he found two officers holding plaintiff down in a prone position,

14   with handcuffs only partially on.  He then completed putting the handcuffs on and placed

15   plaintiff in leg restraints.  Plaintiff does not allege any use of force by defendant Abshire in so

16   doing.  Given that defendant Abshire was responding to an alarm, and he saw officer Sly was

17   trying to place plaintiff in handcuffs, defendant Abshire used a reasonable method to restore

18   security and order.  No actual use of force is alleged, and defendant Abshire's reaction to the

19   situation was reasonable.  No claim of excessive force can be made given defendant Abshire's

20   involvement in this incident.

21          Plaintiff's allegations as to Sgt. Costa similarly fail to allege an unreasonable use

22   of force.  Sgt. Costa arrived at the scene in response to an alarm.  His personal involvement in the

23   incident was limited to directing defendant Abshire to place leg restraints on plaintiff, and

24   directing the officers to place plaintiff in a holding cell.   Sgt. Costa is presumably a supervisor.

25   As the supervisor, Sgt. Costa responded to the incident with the use of a reasonable amount of

26   force to restore security and order.  In fact, plaintiff's only allegation of any actual force involved

6

1   officers Torrez and Sly, who physically handled plaintiff and held him in a prone position on the

2   ground.  Subduing a potentially violent situation with the use of restraints was not an

3   unreasonable response, regardless of how the incident began.[4]  Therefore, Sgt. Costa's personal

4   involvement in the incident did not rise to the level of unreasonable force.  Plaintiff also alleges

5   that he informed Sgt. Costa that officer Torrez used unreasonable force on him.  However, a

6   supervisor is only liable based on knowledge if he knew about the violations and failed to act to

7   prevent them.  In this case, Sgt. Costa was not aware of any violence used on plaintiff prior to the

8   alleged incident between plaintiff and officer Torrez.  After responding to the alarm, Sgt. Costa

9   acted reasonably in having plaintiff restrained and placed in a holding cell.  This effectively

10  prevented plaintiff from being subject to any additional use of force by defendant Torrez.

11  Therefore, Sgt. Costa's response was reasonable, and was not in violation of plaintiff's

12  constitutional rights.

13                            **III.  CONCLUSION**

14          Plaintiff was previously informed of the need to link each defendant to a

15  constitutional violation, and to allege sufficient facts regarding each defendant's role in the

16  violation.  He was also informed of what constitutes the use of excessive force.  As to these

17  defendants, plaintiff's amended complaint fails to state a claim.  Because it does not appear that

18  plaintiff is able to cure the deficiencies identified herein by amending the complaint, plaintiff is

19  not entitled to additional leave to amend prior to the dismissal of these defendants.  See Lopez v.

20  Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  By separate order, service will be

21  authorized as against officer Torrez.

22  / / /

23  / / /

24

25          [4]      Plaintiff alleges officer Torrez assaulted him which is what precipitated the
    incident the other defendants responded to.  However, the alleged assault occurred prior to the
26  alarm and the response thereto.

Based on the foregoing, the undersigned recommends that:

1.      Defendants Stewart, Abshire, Pollard, Ziebert, Drennan, Parker and Costa be dismissed from this action;

2.      The Clerk of the Court be directed to terminate defendant Stormes, Kim, Abrams, and Baubach from the docket as they are not named in the amended complaint;

3.      The Clerk of the Court be directed to correct the spelling of defendant Drennan's name on the docket; and

4.      This action proceed as against defendant Torrez only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 28, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

8